Please call if the clerk would please call the case 324-0438 In re Marriage of Maihan Leifke and Eckhard Leifke, Appalee. Mr. DiDomenico, you may proceed. Justice Holdridge, and may it please the court again, Michael DiDomenico for Mai Leifke. This is a maintenance modification case where the result below was the termination of my client's permanent maintenance award, effectively for the sole reason that the judge believed that she did not make sufficient efforts towards becoming financially self-sufficient and becoming employed. The standard of review is deferential, it's abuse of discretion. I'd like to spend some time this morning explaining why that hurdle is cleared by our side. Familiar principles govern all 510 modification proceedings. It's a two-step process. Step one is, has there been a substantial change in circumstances? Step two is looking to the various statutory maintenance factors to determine if there should be a modification. Our primary contention is that the judge erred in even finding a substantial change in circumstances because there was no change in circumstances at all. The judge's positive finding on the change in circumstances issue is C-988 of the record, where the court found that the petitioner, my client, as a matter of fact, has the ability to work. She has simply chosen not to do so since the 2019 German Appellate Court's decision. This determination constitutes a substantial change in circumstances. Let's talk about why that constitutes an abuse of discretion. As the finding alluded to, these parties were divorced in Germany after protracted German proceedings, oddly enough, applying Illinois law. The court there awarded, divided the property and awarded my client permanent maintenance. In doing so, found that at the time of those judgments that she was dilatory in making efforts towards becoming self-sufficient. In response to that finding, the German courts did what Illinois law tells us to do, is that you are to impute income at a level commensurate with her abilities and reduce the award. That is precisely what the German judgment did. The German judgment awarded her a fixed amount of money, then reduced it to the penny by a minimum wage job. Why is that important? Because the court in Germany found that Ms. Liefke, given her emotional and physical station in life, was not employable beyond a minimum wage level job. Flash forward to the modification proceeding that gives rise to this appeal filed by Mr. Liefke, and we have a judge finding that Ms. Liefke's failure to go actually get a minimum wage job constitutes a substantial change in circumstances. Our position is the only thing that has changed is that a few years has gone by since the judgment was entered. Her maintenance award, as I just said, has baked into it a mathematical reduction for a minimum wage job. Both the German courts and Judge Skirin-Below, who ratified these findings and agreed with them, said that a minimum wage level job is all she can do. That is her ceiling as far as employability. That is her ceiling as far as what income she can earn. That being the case, and that is not challenged by my opponent, there's no cross-appeal in this case. That was a finding, again, both by the German court and ratified by Judge Skirin-Below after hearing the testimony of these parties. That being the case, we believe that the abuse of discretion here is that the judge found that Ms. Liefke's failure to actually go out and get a minimum wage job constitutes a substantial change in circumstances. Again, that job is already baked into her maintenance award, so there is no change in circumstances because the failure to do so has already been accounted for by the German courts applying Illinois law. And that's what the court, in our view, lost sight of here, is that the court had already factored in an imputation and a reduction of her maintenance award, which is exactly what this district said in the Matson case, is what courts are supposed to be doing when confronted with permanent maintenance, payees, and dilatory efforts towards self-sufficiency. You impute and you reduce. You do not terminate. That's what this court said in the Matson case, and that's precisely what the German courts did. So, to the extent that Judge Skirin found that Ms. Liefke's failure to actually go out and get a minimum wage job somehow constituted substantial change in circumstances, there is no case law supporting that, and it is simply contrary to the record. The court was only able to cite, and my opponent in his brief cited, these general propositions of Illinois maintenance law that, at times, that a failure to become financially self-sufficient or take appropriate steps may constitute a substantial change in circumstances. No argument here. That's true. But I think what they'll judge what the court lost sight of, and frankly what I think my opponent in his brief does, is sort of use these general principles to try to apply as if they can apply to every maintenance case in a way that is dispositive of permanent maintenance rights. And I think that that just ignores what one of your colleagues in Elgin likes to tell me, is that every divorce case is sui generis, and what constitutes a substantial change in circumstances is dependent upon the two people you have in front of you, and the family you have in front of you, and the prior judgments and the prior adjudications that have been made in the case. Here, again, if all she can do is get a minimum wage job, and that's already been factored in, what's the change? Nothing. So there has been no substantial change in circumstances here. Even if the court were to find, even if the court were to find that Ms. Liefka's failure to go out and actually get a minimum wage job constitutes a substantial change in circumstances, there's no requirement under Illinois law that maintenance be either modified or revoked. Applying the rest of the factors that would be required at step two, there's no question that every other factor effectively favors the continuation of maintenance. The only other factor the court looked to was the length of payments, the length of time that Mr. Liefka has been paying maintenance. But Mr. Liefka has been paying maintenance, was paying a long time. The German proceedings were protracted. They took a long time. That was already factored into the German court's thinking and the German court's judgment, frankly. Every other factor favors the continuation of maintenance. My client, there's no dispute here. Nobody is suggesting that she has any chance of living within the marital standard of living absent an award of maintenance. Nobody would ever suggest, and Mr. Liefka does not suggest, that he can't afford to pay, continue to pay. This man is making over a million dollars a year in pharmaceutical business against a $4,000 a month monthly maintenance award. There's no, frankly, no argument could be made that he does not have the ability to pay. And on the other side of the equation, we have my client, who is now living in public housing in California and, frankly, needs this maintenance to survive. The judgment calls for the termination of her maintenance in March of next year. I don't know what she's supposed to do if this judgment is reversed, because she'll never survive on a minimum wage job, which is what all the courts say that that is all that she can do. This is not a case where you have a maintenance payor coming into court and saying, I'm on the verge of retirement. I've suffered a catastrophic injury. I can't continue to make money in the fashion that I was doing. So that is not what you have here. This case was decided solely on a judge's perception of lack of sufficient efforts to become employed. And I challenged my opponent in his brief with lots of time to file a response to show me a case in Illinois law, in the Illinois common law, where a permanent maintenance award was terminated for that sole reason. And there was no such case that has ever been that I was able to find. There's no such case that the judge was able to cite below. My opponent in his brief could not cite a case either. Again, it is true that within the Illinois maintenance common law, there is a general understanding of a duty to become self-sufficient, or at least efforts to become self-sufficient. But again, that duty and how much weight it is given, especially if it is given dispositive weight, has to turn on the particular person you have before the court. This is not somebody who has a law degree. This is not somebody that has an MBA and is still a young person or has a PhD. This is somebody who can only do a minimum wage level job. And that is precisely why permanent maintenance was awarded in the first place and why the court's findings that her failure to become employed at a minimum wage level job when it was already imputed to her constitutes an abuse of discretion. Your honors, I don't have anything else right now. I'm still within my time, but unless your honors have any questions, I'm prepared to yield the balance of my time. Any questions from the bench? I have maybe one, maybe two. You know, it's never limited to one. Counsel, I'm only talking about step number one, substantial change. What are your thoughts regarding an eight and a quarter minimum wage rate in 2019 versus what I think the court suggested was $15 or what the evidence suggested was $15 and some change currently? Is that a substantial change? I don't know if it constitutes a substantial change in circumstances, the minimum wage job, if there was evidence that established that the amount of the minimum wage has gone up since the German judgment. Might that have been a fairer outcome here to maybe some firmer ground, maybe you're saying. I think so. But an outright termination, I think, finds no support. And I'm only talking about prong number one. Correct, correct. Does the change in the minimum wage, you know, there's case law that talks about, you know, that actually breaks down increases in income by like 20% or 10%. And if that constitutes substantial change in circumstances, so this is sort of a cousin of that, right? Because we have an imputation of a minimum wage and has minimum wage gone up enough to constitute a substantial change in circumstances, I think it would be, it would go under the reasoning of those cases to talk about sort of percentage eyes, whether a change in circumstances has occurred. But, okay, if minimum wage has doubled or tripled, maybe perhaps that could constitute a substantial change in circumstances on this case. I think that, you know, along with that is an accompanying assessment of the cost of living that is also accompanied because one is a function of the other. Minimum wages increases with inflation at times. Absolutely. So, thank you. Any other questions from the court? No, thank you. Okay. Thank you, counsel. Mr. Schwab, you may reply or respond. Thank you Justice Holdridge, and may it please the court. I am Eric Schwab. I'm the attorney for Eckhard Leifke, the appellee. And I'll just start by saying that on the one hand, this is clearly a very fact driven appeal. But it's an appeal whose implications go directly to the policy aims of maintenance in Illinois. Excuse me, Mr. Schwab. Let me get some interference from someone. I don't know. I think it's the host. A little vinegar, and it will take that smell. It is. I'll text her. Okay, is it corrected? Do we think? I think so. Okay. Okay, Mr. Schwab. Thank you. Thank you. Well, so I was saying, you know, this is very fact driven and it's at a certain time, jurisdictionally complex. I think it's coming back, Mr. I'm going to chat. I'm going to chatter. I swear, I swear by it. The vinegar. I do clean out my coffee pot. I was talking about vinegar. I think we're talking about holiday recipes. I just sent a chat. He was awesome. Yeah, it's. Yeah, they turned off. Okay, okay. We'll, we'll afford you some extra time. Oh, my gosh. I'm so sorry. Everybody. I'm going to turn the clock back. Okay, and make sure we don't get anything. Talking. Well, so I was just starting by saying that behind all the factual complexities of this case, including having a German judgment, the central issue in this case does go directly to Illinois maintenance policy aims. And specifically, this case is somewhat of a test case of this widely stated Illinois policy that all maintenance recipients have a good faith obligation, an affirmative obligation and duty to make efforts to become financially independent by seeking and accepting appropriate employment. And that's a policy that's been stated in many of the cases that are cited in our brief and Lankner can trail. Well, doesn't Lankner say that it's not required in every case, particularly when it would do no good. Well, I don't know that if it would do no good. It's certainly isn't that what Lankner says. Well, it says that it's not required in every I don't know that it's that easy. It can be offset. It's not dispositive in every case. Okay, but I don't I don't I have not seen a case where it's it's not considered a factor. It's just that in some cases, the weight is very low. And that's certainly the case, because it's offset by another offsetting policy concern, which is the right of maintenance recipients to maintain the marital standard of living to the extent that's possible. And it's affordable. Although again, that's not certainly not an absolute right. It's an entitlement or a goal of the policy. But in this case, the first part of that policy of the obligation to make efforts to become self-supporting. This is a test case for that, because this is not a case of somebody who has been dilatory in their efforts to become self-supporting. This is not a case of somebody who has been unable to do better than a minimum wage job. This is somebody who has refused to seek or obtain employment all along since the divorce filing. This fact was noted and addressed in detail in the 2013 German judgment, which is in the record. It was addressed again in the 2019 German appellate judgment that was in the record. And it's admitted in Ms. Leifke's opening brief when she refers to this obligation as her phrase is a so-called obligation. She's saying to me, this is no obligation. And this goes then, the policy problem here is illustrated by Ms. Leifke's argument, which says, as far as a substantial change of circumstances goes, if I just refuse to work all along, I have a get out of maintenance termination free card because I'll never change my circumstances. So the circumstances have never changed on that basis. Now, again, contrary to what Mr. DiDomenico, I think, suggested, multiple cases have underscored that a maintenance recipient's failure to make any good faith effort to find employment certainly can establish the predicate for a finding of a substantial change in circumstances. And that was said as recently as this court's Mattson case where it explained, and that's an unpublished case, but it's after 2021. But it's persuasive or interesting here because they say, in this context, substantial change of circumstances is a term of art. It's describing the factual predicate to initiate a maintenance modification proceeding under Section 510. I think that conceptually one can see that there is a change in circumstance because when that maintenance order is handed down under Illinois law, it brings with it that obligation. And so at the latest, that obligation triggered for Ms. Leifke in 2019 when the German appellate court issued that judgment. And so the change in circumstance was after that point, her failure to comply with that obligation. She made no effort to find employment. But I also want to address, and you heard this in Mr. DiDomenico's argument, there's kind of a bait and switch she's using, where on the one hand, it was the predicate in this case for the maintenance modification proceeding. But when it came to Judge Skerrin's order on modification, that was not solely and exclusively predicated on Ms. Leifke's refusal. And I'm going to use that word refusal to find work. Judge Skerrin found expressly, Mr. DiDomenico cited the page, in fact, for me, that he found she had the ability to work. And that her testimony about not being able to work was not credible. And so she's saying she doesn't have to work. But that wasn't the basis solely of Judge Skerrin's ruling. He looked at all of the factors under Section 510 and 504. And he said expressly in his ruling, to the extent he didn't discuss certain factors, it didn't mean he hadn't considered him. But he looked expressly at the duration of the marriage, which is a factor versus the duration of the maintenance received and the duration of the maintenance paid. He also looked under the catch-all provisions of other relevant factors. He looked at her credibility, her lack of credibility, her complete lack of good faith in her trial presentation about her situation, about her ability to work, about her purported hardship, all of these circumstances, about even her financial condition. I will just point out, we proved in court, and it's in the record, she didn't apparently file tax returns after 2019. So we had no evidence to put to the court that would show a tax return to show if she had other sources of income, had other sources of employment. She's just not filing tax returns. So the argument, well, she might suffer hardship without maintenance, and even the argument that she's unable to maintain the marital lifestyle, are being made kind of in a vacuum because she actively prevented any evidence from coming in of what her financial circumstances were. She's not filing tax returns. But so the two-step here is that this is, yes, this was the predicate for the finding of a substantial change in circumstances, the refusal to work. But Judge Skaran looked at all of the elements in making his decision. And he found, and under all of those factors, he did not immediately terminate maintenance. He gave a balanced decision. He said, I'm going to grant her two more years of maintenance, but then it has to terminate at this point. And I think the numbers bear that out. By the time his ruling takes effect, the termination takes effect in March of 2026, Ms. Leifke will have received maintenance for approximately 18 years. 18 years of maintenance for a marriage that from the wedding till the divorce filing was approximately 11 years. From the marriage until the final German judgment, which, as Mr. DiDomenico admitted, was the prolonged German proceeding, but it was just under 15 years. So even if you say a 15-year maintenance, this is an extraordinary, strike that, a 15-year marriage. Apologies. This is an extraordinary length of marriage. This is far beyond what I think one would see or sees in many of these courts. And I think that's also important to keep in mind when we're looking at the other precedents in this case, the Bernay case and other cases where the courts have said, well, this isn't terminating. Don't go so far as to terminate the maintenance here. These are all cases where you have very often 17-year marriages, 20-year marriages, more than 20-year marriages. And these are cases where the termination of maintenance is being litigated seven years after the divorce in most cases or less than 10 years after the divorce. So that sets this case apart. The sheer duration of the maintenance relative to the length of the marriage. This is not, again, somebody who's been dilatory, but somebody who categorically refuses to seek employment and says, I don't have to. That part of the law doesn't apply to me. It's a so-called obligation is all it is. So I'd like to talk a bit about this offsetting issue of the entitlement of a spouse to maintain the marital lifestyle to the extent that the payor spouse can afford it and to the extent that the other spouse can never possibly work hard enough to achieve it. It can't be the case that that's an open-ended, an absolute rule. That would imply that every marriage of whatever length, as long as one of the spouses comes out unable to maintain the marital lifestyle and the other spouse does, every marriage of that sort is going to result in indefinite maintenance because the other spouse will never be able to achieve that much. And even if one allowed for that fact, I think it's a different analysis here if you have a spouse that isn't trying to reach that level of maintaining the marital standard of living, but refuses to try. And in this one, I think we need to look at the discussion that was had with Mr. DiDomenico about the German appellate court's imputation of income. The German appellate court at the time imputed income. It was a lower minimum wage and that's already been discussed. But I think what's important here is the German appellate court didn't say, we impute income and hereby say that wipes out any obligation to seek work. And Mr. DiDomenico didn't point the court to any case in Illinois that says if you impute income, that wipes out the spouse's obligation to become financially independent. And it doesn't take long or much reflection to figure out why. If that were the case, spouses seeking maintenance would invite an imputation of income because it would obviate themselves from ever needing to find work. And it would again mean there's no change in circumstances as long as they do nothing and remain dependent. I think a common sense understanding of imputation is the imputation says we're going to impute minimum wage labor as an incentive to the maintenance recipient to go out and get a minimum wage job. And in response to your question, Justice Bertani, about the changes in minimum wage, I think what's interesting to reflect here is that this goes all the way back to the 2013 German judgment where the German court is saying, I don't think she can do better than minimum wage. However, if Ms. Leifke had complied with her obligation to seek work, and wait, I'll break up, not only that, in both German judgments, they said, and by the way, the evidence showed us this is in these judgments, there's a job out there for her, a part-time job in the German consulate that she could take on. And as the children become emancipated, she'll be able to work full time. So this is somebody who if she had taken on a minimum wage position all the way back in 2013, who knows what the evidence would have been, what this proceeding would have looked like if this person had been working that long, had obtained experience, had possibly gotten increases in her compensation commensurate with her experience. You could have somebody that might be able to maintain the marital standard of living. And I'll point out, as we pointed out in our brief, it's important to note that in the 2019 German judgment, it made a finding for setting maintenance on that marital standard of living, which was just under $5,000 a month at the time, and then it imputed approximately $900,000 of income in order to bring the maintenance level that Mr. Leifke is paying down to just over $4,000. But so the ability of a person if they're working for an extended period of time at, let's say, starting at minimum wage, it's entirely possible that by the end of that, they could be making $5,000 a month, $60,000 a year. I don't know. That's speculation. What's so unique about this case, what makes it such a test case, is that this is a person who refused to even try, and not just briefly, who has refused consistently for over a decade not to even try, not to even get it a chance. And you heard Mr. DiDomenico, he's sort of saying, well, we don't know what's going to happen after March 2026. It's astonishing. Again, the incentive should be in place. This person could get employment, could try to become self-supporting. At the end of the day, if you don't have the spouse who's receiving maintenance making some effort to become self-supporting, all of these other offsetting and balancing policy concerns fall apart. You have people instead getting a situation of permanent dependence, and then protecting that permanent dependence by not making efforts to help themselves, by not making efforts to improve themselves. And on the other hand, you have a payor, all of whose efforts to improve themselves after the marriage, and again, this is richly documented in the German judgments and in the trial record, Dr. Leifke works hard and still worked very hard to improve his employment and his income earning power. And somehow that just becomes an albatross where that means he can never get out of this financial dependence of his former spouse from many, many years ago. And I just don't think that that's consistent with Illinois policy. And I just think it's important to see this in the context so that the claims that, oh, well, this court, if you don't rule one way, you might be throwing somebody out on the street. It's important to know. I don't know that that's the case. I don't think the evidence supported that. I think Ms. Leifke's lack of credibility of trial undermines her ability to say that based on the evidence. But also to the extent that's even true. It's a product of choice. And in the Shen versus Shen case, there's a nice comment, and this is referring to the maintenance payor in that case, who sought a modification of maintenance because his income had been reduced at his job, I believe at Trader Joe's. And the court said, you have to assess in these claims whether the person's change in financial situation is a product of circumstance or a product of choice. And I think in this case, it's clear that Ms. Leifke's circumstances are a product of her choice because she has chosen not to even start working. She chose that in 2013. She chose that in 2019. And as far as we can say, that choice continued at least up to the trial. And, you know, important that the evidence that was in front of Judge Skaran, not just the unwillingness to work, but the lack of good faith effort. You had evidence that while she's not working, she's going hiking with her family in the Alps. And when she's asked about it at trial, she doesn't want to give a straight answer. She moves to Southern California and is filing tax returns there that don't disclose her home address, that use her accountant's address. She moves to Southern California for reasons she could never explain other than the weather is nice. Well, it's also one of the highest costs of living in the country. We've got credit card records showing she's going to Home Depot. She's a member of Costco. She's shopping at Whole Foods. She's shopping at Trader Joe's. We've got charges at the mat and me at a yoga studio. She's doing Zumba. And I can explain what Zumba is briefly if it's something the court's not familiar with. That's coming. It's a form of dance exercise. I can't sit. I can't stand. I can't work, but I can do yoga whenever it's available. I can do dance exercise. Not only that, the money, and this was in the record at her deposition as we're deposing her, we say, do you have money? And she unfolds a stack of 50s and $100 bills and says she doesn't know how much it is. And this is because we have financial records that we put into the into the record financial statements showing that she's thousands of dollars are getting deposited and withdrawn, deposited and withdrawn. But this is somebody who says, I'm living on public assistance. I'm just about to land in the street. This is somebody who produces notes from a lender. Mr. Schwab, the red light's been on for a while because of problems at the beginning of your argument. So, at this time, just a concluding statement, please. Just in conclusion, I would say that this is not a case about hardship or income inequality. It's a case about accountability and compliance with the law of a maintenance recipient. This is somebody who's refused to comply with her obligation under Illinois law. She's not made any good faith effort. She's been found at every stage that she does have the ability to work. And finally, I'll say that this court did not rule simply on the basis of her refusal to find work. It looked at all of the factors. It balanced the duration of the maintenance, the duration of the marriage, all of these other factors, and gave a balanced judgment that did not immediately terminate maintenance, but continued for 2 more years. Okay, thank you. Are there any questions from the bench? Further questions from the bench? I have 1, very simple 1 council just to put up an issue aside. The ability to pay is not an issue. Is that correct? That's correct. Justice. Thank you. Okay, and further nothing justice Peterson. No, I have none. Thank you. Okay, well, thank you for your argument. Mr. Schwab. Mr. D. Domenico, you may reply. Well, I like Germany. I think it'd be fun to go there. And but I, but I think that a lot of what you just heard wasn't it was were arguments that should have been made to the German courts and the German courts of appeal because a lot of what Mr. Schwab just told you was effectively either trying to impeach the German judgment or complaining about it. The fact of the matter is, is the German judgment adjudicated the maintenance issue to a conclusion. It awarded her permanent maintenance. It imputed income to her based upon her failure to find a minimum wage job. And a lot of what you heard are effectively complaints about the judgment itself. This is a modification proceeding. Okay. The question before the court is, was there a substantial change in circumstances and the substantial change in circumstances was according to the court. And according to Mr. Schwab are that some time has gone by and she has in that time also not gotten a minimum wage job. Mr. Schwab speculates. Well, if she had gotten a minimum wage job, maybe this would have happened. And maybe that would have happened. And maybe this would have happened. And maybe it's just fine to terminate her maintenance prospectively in March of 2026. Let me tell you something else that the Shen court said. Trial judges cannot gaze into a crystal ball and foresee what the future holds for the parties. This explains why permanent maintenance is always modifiable or terminate terminable upon a change in circumstances. What is this woman supposed to do in March of 2026? What is her station in life going to be then? We don't know that. Judge Skirin doesn't know that. Mr. Schwab in his argument is asking this court to engage in the very kind of speculation that the Illinois common law forbids in maintenance cases. That is exactly what is and that's exactly what Judge Skirin is doing in his judgment. The fact of the matter is, is let's go back to the finding. It says does that the finding of the substantial change was that Miss Lefka has the ability to work. The ability to work where at a minimum wage level job that is an adjudicated conclusion in Germany. It is an adjudicated conclusion in DuPage County. That is her ceiling. That is her upside wishing and hoping for something more is just speculation. And it is not permissible in court judgments. This court's been saying that for decades and that's all that's going on here. They're just if she would have gotten a job, maybe she would become self-sufficient. Who said that? There were German judgments. The judgment below is replete that she could never a minimum wage level job could never afford her the ability to work with to live within the marital standard of living, which is the benchmark for any marital, which is the benchmark for any maintenance award. And in any maintenance modification proceeding, this award is effectively penal. And this determination of maintenance on this record and on these facts is effectively penal. I understand Mr. Schwab's point about that. Is this a test case? And I acknowledge this notion of, OK, in permanent maintenance cases, what exactly is the duty of the payee to become self-sufficient? How does that how does that get factored in? And the answer to that question is, it depends. It depends who you're talking to and what the facts and circumstances are of the of the family before the court. As I said from the beginning, is it a change in circumstances that my Liefke has not gotten a minimum wage job yet, even though one was imputed to her from the very beginning? No, of course not. What hope does she have beyond minimum wage to get to to to to to to earn income that could possibly lead her to a path where she could on her own live within the marital standard of living? The answer is nothing. All courts agree that that could never happen. That minimum wage is her ceiling. That is the most that she could do. And again, I appreciate that. Excuse me, that whether or not the recipient can live within the marital standard of living, that is the standard. And I think it's important to recognize that that is not the case. And there is no question that that cannot that is not going to that is no longer going to happen as of March 2026. Again, I bring you back again to what this court said in the Matson case that the in that case, the payor made an argument on appeal that the court should have given dispositive weight to the lack of the lack of efforts to become self-sufficient in this court said, no, you do not give dispositive status to that in a permanent maintenance case. And Mr. Schwab can try to spin Judge Scurin's order all he wants. No, I don't think any reasonable reader of the judgment. It the whole entire decision brims with anger, frankly, toward Mr. toward my clients perceived lack of a willingness or ability to go out and get a minimum wage job. That is what this turned on. Okay. The only other factor that the judge really gave any consideration to was, as Mr. Schwab said, the length of the marriage and how much he's paid. But so what? The fact of the matter is, is no court in a permanent maintenance case has ever done what this judge has done. And what Mr. Schwab asked you to do, which is elevate this firm to a minimum wage. This guy probably spends more cutting his lawn and doing landscaping than he does pain or maintenance. And we want to talk about Zumba classes that this woman does to manage her pain on the advice of doctors. And then she pulled out a couple bucks at her deposition. And that she belongs to Costco. Is that where we're at here? Is that where is that really what this turns on? Or are we or are we trying to fulfill the original purpose of the award from the German courts, which is recognizing that this woman will never survive? Forget about living in the marital lifestyle. I'm talking about surviving absent an award of maintenance from somebody who can clearly afford to pay it that nobody is suggesting can't afford to pay it. Well, I've let you go beyond your time. Would you like to conclude? Thank you. The abuse of discretion here, there was no change in circumstances. There was only the passage of time, even if there was the result in this case is as inequitable and unfair as it gets, considering that every other factor weighs in favor of the continuation of my client's permanent maintenance. And justice Holdridge, I thank you for your time. And unless your colleagues have any other further questions of me. Questions from the bench. No, thank you. Okay, thank you counsel both for your spirited argument in this matter this afternoon. This matter will be taken under advisement and a written disposition shall issue. And at this time, the clerk of our court will ask you out of our remote courtroom and we'll proceed to the next case. Thank you. Thank you.